# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

JULIE GREENE-HOWARD,

          CASE NO. 16-12621

   *Plaintiff*,     MAGISTRATE JUDGE PATRICIA T. MORRIS

*v.*

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant.*

_____/

## OPINION AND ORDER ON CROSS
## MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 19)

### A.  Introduction and Procedural History

This is an action for judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Julie Greene-Howard's claim for disability benefits under the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq*, and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq*. (Doc. 1; Tr. 1-3). The case is before the undersigned magistrate judge pursuant to the parties' consent under 28 U.S.C. § 636(c), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference. (Docs. 3, 13, 15). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 19).

Plaintiff was fifty-two years old as of February 13, 2015, the date of the ALJ's decision. (Tr. 22, 145). Her applications for benefits were initially denied on April 17, 2013. (Tr. 81-82). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Lisa Leslie on January 27, 2015. (Tr. 27-68).

Plaintiff, represented by attorney Ms. Ilanski, testified, as did vocational expert ("VE") Ms. McFarland. (*Id.*). On February 13, 2015, the ALJ issued a written decision in which she found Plaintiff not disabled. (Tr. 10-22). On May 4, 2015, the Appeals Council denied review. (Tr. 1-4). Plaintiff filed for judicial review of that final decision on July 14, 2016. (Doc. 1).

**B.      Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions

of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or

equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 22). The ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity following the alleged onset date, March 30, 2010. (Tr. 12). At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: "status post amputation of four fingers, asthma/chronic obstructive pulmonary disease (COPD), depression, anxiety, and alcohol abuse." (Tr. 12-14). At Step Three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listed impairments. (Tr. 14-15). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with additional limitations as follows:

> No fine manipulation with the left hand; no concentrated exposure to extreme heat, cold, humidity, fumes, odors, dust or other pulmonary irritants; she is limited to simple, routine, repetitive tasks.

(Tr. 15-19). At Step Four, the ALJ found that Plaintiff was unable to return to her past relevant work. (Tr. 20). At Step Five, the ALJ found that Plaintiff could still perform jobs which exist in significant numbers in the national economy, and was thus not disabled. (Tr. 20-22).

### E.     Administrative Record

## 1. Medical Evidence

The Court has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

## 2. Application Reports and Administrative Hearing

### a. Plaintiff's Function Report

Plaintiff completed a function report on April 4, 2014, wherein she wrote that she was disabled by depression, colitis, amputation of fingers on her left hand, carpal tunnel syndrome, and back pain. (Tr. 213). She wrote that depression interfered with her sleep, eating, and communication with others. (*Id.*). Her colitis prevented her from "leav[ing] the bathroom for hours" and caused vomiting. (*Id.*). Amputation of fingers on her left hand caused carpal tunnel syndrome on her right. (*Id.*). Cervical fusion caused back pain which prevented her from completing "almost any kind of physical labor." (*Id.*). Plaintiff's daily activities were composed solely of watching television and eating. (Tr. 214). Her hobbies included watching television and reading books; she described the frequency with which she performed these activities by exclaiming "it's all I do!!!!" (Tr. 215). Plaintiff sometimes experienced insomnia followed by periods of sleeping for a full twenty-four hours. (Tr. 214). She was sometimes "too depressed" to perform personal care activities like dressing, bathing, caring for hair, shaving, and feeding herself. (*Id.*).

Plaintiff used lists and reminders from friends to ensure she performed personal care and took medication on time. (Tr. 215). She prepared her own food, consisting of yogurt and canned food. (*Id*.). She also washed laundry and dishes. (*Id*.). Plaintiff rarely went outside due to social anxiety. (Tr. 216). She could not go outside alone due to anxiety, and chose not to drive vehicles. (*Id*.). However, she shopped in stores for food "very infrequently." (*Id*.). She did not spend time with others. (Tr. 217). However, Plaintiff also wrote that she had no difficulty getting along with others. (Tr. 218).

Plaintiff checked boxes indicating that she was limited in terms of lifting, squatting, bending, sitting, kneeling, stair climbing, memory, completing tasks, concentration, using hands, and getting along with others. (Tr. 218). She wrote that her back pain prevented her from "physical movement" and her depression caused her to lack "any desire or energy." (*Id*.). She was unable to estimate her ability to walk, writing "depends (asthma)." (*Id*.). She was likewise unable to estimate her ability to pay attention, writing "varies." (*Id*.). She did not finish what she started, but could follow written or oral instructions "pretty well." (*Id*.). She got along with authority figures "okay," but did not handle stress or changes in routine well. (Tr. 219). Plaintiff did not list any medication side effects. (Tr. 220).

### b.    Third-Party Function Report

Plaintiff's boyfriend Tim Rivard, with whom she cohabitated, completed a thirty party function report on April 4, 2014, which generally confirmed Plaintiff's own report. (Tr. 226-33).

### c.      Plaintiff's Testimony at the Administrative Hearing

At the January 27, 2015, hearing before the ALJ, Plaintiff testified that she stopped working in 2002 when her father committed suicide, which deepened her preexisting depression. (Tr. 38-39). Her use of the anti-depressant Prozac helped "somewhat." (Tr. 40). Plaintiff's depression stripped her of motivation and caused somnolence problems; she sometimes slept "four days in a row for 20 hours a day," and other times was unable to sleep at all. (*Id*.).

Plaintiff testified that her average day consisted of sitting on the couch, watching television, feeding her pets, and performing chores like washing dishes and clothes. (Tr. 40). Her boyfriend performed the majority of the chores around the house and performing the necessary shopping. (*Id*.). She had great difficulty leaving the home for any reason, to the point of feeling "nervous and upset all day" if she has an appointment. (Tr. 41). She did not, at the time of the hearing, have any hobbies which caused her to leave the home. (Tr. 41-42).

Plaintiff also testified that she experienced colitis flare ups "almost daily," spending roughly an hour in the bathroom each morning, waking four or five times nightly to

8

defecate, and in some cases vomiting. (Tr. 42). Stress worsened these symptoms. (*Id*.). She visited the emergency room "several times" on account of colitis symptoms, including on one occasion two or three months prior to the hearing. (Tr. 43). Prescription medication helped to tame this ailment "somewhat." (*Id*.).

Plaintiff's cervical spine was fused at three points, which caused back pain during physical activity and weather changes. (Tr. 44). She estimated that she could stand for only about one hour at a time and sit for about two hours at a time. (*Id*.). She could walk for about thirty minutes without rest. (*Id*.).

Three fingers on Plaintiff's left hand were amputated in 1980, and she therefore used her right hand "pretty much exclusively." (Tr. 45). This caused carpal tunnel syndrome in the right hand through overuse. (*Id*.).

The ALJ noted that while Plaintiff alleged onset date was March 2010, the medical record showed no records prior to 2011. (Tr. 49).

### c.     The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Plaintiff's ability to perform work. The ALJ first asked the VE to characterize Plaintiff's past relevant work. (Tr. 53). Because the ALJ proceeded to Step Five, Plaintiff's past work is irrelevant to this appeal. (*Id*.).

The ALJ asked the VE to assume a hypothetical individual who was limited to light work; but who could perform "no fine manipulation with her left hand and would be able to have no concentrated exposure to extreme heat, cold, humidity, fumes, odors, dusts or other pulmonary irritants, and would be limited to simple, routine, repetitive tasks." (Tr. 61-62). The VE first noted that if the claimant was limited to work at the sedentary level of work, she would be disabled because such positions require frequent use of the bilateral extremities. (Tr. 62). The VE then found that a worker limited as in the ALJ's hypothetical could perform work as a counter clerk (62,000 jobs nationally), sales attendant (54,000 jobs nationally), and hostess (11,000 jobs). (Tr. 63).

In a second hypothetical, the ALJ asked the VE to imagine the same restrictions as before, but to add that the individual would be limited sedentary work; the VE reiterated her conclusion that such a worker would be precluded from most positions. However, the VE found that such a worker could potentially perform the role of a "code separator," of which there were only 5,000 such positions nationally, and surveillance systems monitor, again with roughly 5,000 positions nationally. (Tr. 65).

Finally, the ALJ added further postural, manipulation, and attention restriction to the second hypothetical; the VE found that such a worker would be unemployable. (Tr. 66). The VE noted that workers are expected to be off task no more than fifteen percent of the workday. (*Id.*).

## F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a

person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility

assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the

severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed

prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

## G.    Analysis

Plaintiff argues that the ALJ erred in the following ways: 1) Failing to articulate how it was determined that Plaintiff could perform "light" work, and interpreting raw medical data in the process; 2) Failing to adequately compensate for Plaintiff's depression and anxiety; 3) Failing to give "good reasons" for the weight accorded to Dr. Wagner's opinion; 4) Providing inadequate reasons for discounting the third-party function report provided by Plaintiff's friend, Mr. Rivard. (Doc. 16 at 5-13). These arguments will be addressed in turn.

### 1.    The ALJ's RFC Finding is Well Supported

Plaintiff first argues that the ALJ inadequately explained how he reached the finding that Plaintiff could perform "light" work. (Doc. 16 at 5-6). She notes that under SSR 96-8p the ALJ is obligated to provide a

> [N]arrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and

describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Plaintiff does not point to any particular piece of medical data which she believes is inconsistent with light work. Plaintiff instead appears to argue that the ALJ's decision is so deficient that she need only point to the lack of evidence in the ALJ's decision, rather than producing any evidence of disability. This represents a misunderstanding of the burden-shifting system employed in the five-step sequential evaluation process. Claimants bear the burden of demonstrating disability "[t]hrough step four." *Jones*, 336 F.3d at 474. Claimants thus bear the burden of demonstrating that the RFC assessed by the ALJ does not incorporate all of the claimant's supportable limitations.

Even if Plaintiff demonstrated that the ALJ failed to comply with the narrative discussion requirement of SSR 96-8p, she is not entitled to relief unless she also shows that the RFC does not properly describe her supportable impairments. As discussed in greater detail in the sections below, she has not identified any well-supported symptoms not accounted for by the ALJ's RFC.

Plaintiff also argues that the ALJ improperly evaluated raw medical data, a task reserved to medical experts. (Doc. 16 at 6-17). While not entirely clear, Plaintiff appears to argue that the ALJ was obligated to base her RFC finding on an RFC assessment drafted by a physician. This is not so. "[T]o require the ALJ to base her RFC finding on a

physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) (quotation omitted). No error can be found here.

### 2. *The ALJ Adequately Accounted for Plaintiff's Depression and Anxiety*

Plaintiff next argues that the ALJ erred by insufficiently accounting for her depression and anxiety ailments. (Doc. 16 at 8-9). In essence, Plaintiff asserts that the limitation to "simple, routine, repetitive tasks" is tantamount to a restriction to "unskilled" work. She asserts that this restriction does not account for the symptoms produced by her metal ailments, including in the areas of "carrying out and understanding instructions, responding appropriately to supervision, co-workers and work pressures in a work place." (*Id.*).

Plaintiff's argument is a variant of an argument frequently raised in this district: that a limitation to "unskilled" or "simple" work does not account for moderate concentration, persistence, or pace ("CPP") limitations. Courts have resolved this issue both ways. S*ee Hernandez v. Comm'r of Soc. Sec.*, No. 10–cv–14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). Some judges in this district have noted that even

simple, unskilled, routine jobs often require meeting quotas, alertness, or consistent pace. *See, e.g.*, *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005); *see also Teal v. Comm'r of Soc. Sec.*, No. 10-13154, 2011 WL 4484910, at *3 (E.D. Mich. July 12, 2011) (noting that surveillance monitor and visual inspector positions "require a high degree of sustained concentration"), report and recommendation adopted, No. 10-13154, 2011 WL 4484864 (E.D. Mich. Sept. 26, 2011).

Ultimately, courts must look to "the record as a whole" to determine whether the restrictions included by the ALJ in the RFC assessment are sufficient to account for the claimant's CPP limitations. *Hernandez*, No. 10–cv–14364, 2011 WL 4407225, at *9.

Plaintiff does not point to any medical evidence in the record supporting her claim that a limitation to "simple, routine, repetitive tasks" is insufficient to account for her mental health symptoms. Plaintiff is represented by competent counsel, and must bear the burden of demonstrating her entitlement to disability benefits through Step Four of the sequential evaluation process. She is not entitled to rely upon the Court to scour the medical record on her behalf in the search for evidence which could support her arguments. *See United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

Plaintiff's failure to bolster her argument with any references to the record waives that argument.

Even if Plaintiff's argument was not waived, it would fail on the merits. The ALJ made note of medical records beginning in 2012 which suggest that Plaintiff suffers from anxiety and depression. (Tr. 17-19). Plaintiff treated her depression with medication, and reported ups and downs in her emotional wellbeing from 2012 through 2014. (Tr. 17-18). In March 2013 her depression was "not well controlled" (Tr. 256). In September 2013 she reported great emotional distress after her sister committed suicide. (Tr. 296). In November 2014 she was "feeling pretty good on her current medications," which were "finally [in] . . . the right combination." (Tr. 293). In August 2014 she was "overwhelmed by her dependent living situation," and expressed distress with the feeling of being "stuck + trapped" because she had not "worked in 13 years & I have a felony.[1]" (Tr. 297).

As found by the ALJ, the totality of the medical records in this matter are scant, and only a few of those records deal with mental health. These records establish that Plaintiff suffers from depression and perhaps anxiety, and that she is under treatment for these disorders, but they do not establish any functional restrictions which would impede Plaintiff's ability to perform work. The ALJ also properly noted evidence that Plaintiff's

---

[1] The ALJ noted inconsistency between Plaintiff's alleged 2010 disability onset date and her unemployment beginning in 2002. (Tr. 17). The undersigned also notes Plaintiff's candid admission to her doctor that her felon status impeded her ability to obtain work. (Tr. 297).

ability to focus is fully intact, including her penchant for reading. (Tr. 14). Likewise, while Plaintiff attested to avoiding others (Tr. 216), the ALJ noted that she was able to maintain a relationship with her romantic partner (Tr. 14). The ALJ's RFC adequately accounts for Plaintiff's supportable mental ailments.

### 3. The ALJ Provided Good Reasons for the Weight Accorded to Dr. Wagner's Opinion

Plaintiff next argues that the ALJ erred by providing inadequate reasons for discounting the opinion rendered by her treating physician, Dr. Wagner, as required by 20 C.F.R. § 404.1527(c)(2). First, she notes that Dr. Wagner was the supervising family practice physician at his clinic, a fact which the ALJ neglected to mention. (Doc. 16 at 11). She also complains that the ALJ did not discuss the length, frequency, nature, or extent of the treatment relationship; the consistency with the remainder of the medical record; or other relevant factors. (*Id*. at 11-12). While ALJs are obligated to consider all of the factors listed in 20 C.F.R. § 404.1527(c) when evaluating medical opinions, they are not obliged to reference every factor in the decision. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). Finding a physician's opinion inconsistent with other medical records is sufficient reason to discount even a treating physician's opinion. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Hudson v. Colvin*, No. 15-163-ART, 2015 WL 12684338, at *2 (E.D. Ky. Dec. 23, 2015).

The ALJ noted that Dr. Wagner's proposed physical restrictions, including lifting no more than ten pounds and walking less than two hours per day, was inconsistent with other evidence of record. (Tr. 19). In particular, the ALJ noted that Plaintiff walked two miles per day in July 2014, which suggested that Plaintiff could walk for more than the two hours daily suggested by Dr. Wagner.[2] (Tr. 303, 305). This is not to ignore Plaintiff's complaints of some hip or back pain, which were worsened by the exertion of walking (Tr. 260, 270, 303). However, the record does not support a finding that Plaintiff's pain was severe enough to meaningfully limit her ability to walk or lift. Notably, Plaintiff's testimony at the hearing before the ALJ and in her function report both focused primarily on her mental health. The undersigned also notes that Plaintiff treated her back pain with over the counter ibuprofen (Tr. 304), suggesting that her back pain was manageable without use of prescription medication. *See Lang v. Colvin*, No. 2:14-CV-00175-JMH, 2016 WL 918987, at *6 (E.D. Ky. Mar. 4, 2016) ("It is not inappropriate for an ALJ to consider the type of treatment, including the type and relative strength of pain relief medications used by a claimant . . . ."); *Battice v. Comm'r of Soc. Sec.*, No. 1:12-CV-1389, 2014 WL

---

[2] Plaintiff argues that the record regarding her penchant for walking two miles per day offers "no clarity as to whether she walks 2 miles at a time or she breaks up her walks." (Doc. 16 at 11). Regardless, the ALJ cited this record as evidence that Plaintiff was able to walk for a greater period of time than suggested by Dr. Wagner, who proposed that she be limited to walking less than two hours per day. (Tr. 305). Given that Dr. Wagner's proposed walking restriction does not establish a lower bound of her walking abilities, any evidence that Plaintiff walked more than necessary provides some reason to doubt Dr. Wagner's opinion.

1366489, at *9 (W.D. Mich. Mar. 31, 2014) ("[U]se of over-the-counter pain medications undercut his claims of disabling pain.").

Plaintiff complains that the ALJ relied on boilerplate language, such as complaining that the "severity of the limitations are not consistent with the totality of the medical evidence of record" (Tr. 19) without referencing any specific portion of the "300+ page record" (Doc. 16 at 11). The majority of Plaintiff's short medical record deals with complaints of gastrointestinal distress and emotional issues. As detailed above, only a very small portion of the record addresses Plaintiff's complaints of back pain, and nothing in the record corroborates Dr. Wagner's proposed ten pound lifting limitation. While the ALJ characterized this as an inconsistency, it is perhaps more accurately termed a lack of support for Dr. Wagner's findings. Given the dearth of evidence supporting Dr. Wagner's strict limitations, the ALJ was well within her power to give minimal weight to that physician's opinion.

The Commissioner also asserts that Dr. Wagner's opinion is a check-the-box form, and is therefore so deficient that the ALJ need not have considered it in the first place. (Doc. 19 at 13-15). An ALJ's failure to consider an opinion is harmless where the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). It is well settled that a check-

the-box form, unaccompanied by explanation, is entitled to little or no weight, because "it is nearly impossible to analyze" the justification for the checked boxes. *See Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. Appx. 468, 474 (6th Cir. 2016); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."). The Sixth Circuit recently indicated that a check-the-box opinion unaccompanied by other supporting evidence "meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016). Therefore, even if the ALJ wholly ignored Dr. Wagner's opinion, that error would have been harmless. In this case, the ALJ engaged with the decision and gave brief but sufficient reasons for discounting Dr. Wagner's opinion.

### 4. *The ALJ Adequately Considered Mr. Rivard's Third-Party Function Report*

Finally, Plaintiff contends that the ALJ gave inadequate reasons for discounting the third-party function report produced by Plaintiff's boyfriend with whom she shares a home, Mr. Rivard. (Doc. 16 at 12-14). She asserts that the ALJ's justifications are not specific to Mr. Rivard's report, but rather are boilerplate justifications for ignoring all third-party function reports. (*Id*. at 13). First, the ALJ noted that Mr. Rivard was not a medical expert, thus his estimation of Plaintiff's medical ailments is not entitled to any special deference. (Tr. 19). Plaintiff contends that while this is true, it is irrelevant, because the purpose of

24

third-party function reports is to provide a layman's view of the everyday life of the claimant. (Doc. 16 at 13). Both parties are quite correct in their respective arguments. Mr. Rivard's report should not be expected to provide medical expertise, and thus should not be discounted for his lack of medical expertise. However, the ALJ did not err by simply noting the limited scope of Mr. Rivard's knowledge.

Plaintiff also complains that the ALJ made certain unreasonable presumptions about her relationship with Mr. Rivard. (Doc. 16 at 13). The ALJ found that Mr. Rivard would be "likely influenced, at least minimally, by his affection towards the claimant and a natural tendency to believe and support her." (Tr. 19). Plaintiff asserts that this is mere speculation, and asks how the "judge know[s]" the relationship between her and Mr. Rivard. (Doc. 16 at 13). Review of Plaintiff's testimony at the oral hearing shows that she readily admitted Mr. Rivard was her "boyfriend," and that she cohabitated with him. (Tr. 40). In August 2014 she expressed displeasure with being overly "dependent on [her] boyfriend" given her lack of income. (Tr. 297). The record therefore supports the ALJ's finding that Mr. Rivard has an interest in bettering Plaintiff's finances, if only to defray the cost of Plaintiff's cohabitation. Given that Plaintiff calls Mr. Rivard her boyfriend, it was also reasonable for the ALJ to conclude that Mr. Rivard's affection for Plaintiff may interfere with his objectivity.

Finally, Plaintiff asserts that the ALJ insufficiently supported her claim that Mr. Rivard's statements were inconsistent with the preponderance of the medical record. (Tr. 16 at 13-14). As noted above, Mr. Rivard's function report is essentially duplicative of Plaintiff's own self-reported limitations. The ALJ's justifications for discounting Plaintiff's self-reported limitations are thus sufficient to support her treatment of Mr. Rivard's report. No error can be found here.

### 5. *The ALJ Erred in Considering Whether Plaintiff Equals a Listed Impairment*

Finally, I note one issue which neither party has addressed. ALJs are empowered to determine whether a claimant meets a listed impairment at Step Three of the sequential evaluation process without assistance, but are obliged to seek the input of a medical expert when considering whether the claimant "equals" a listed impairment. *See Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Krawczak v. Comm'r of Soc. Sec.*, No. 14-11281, 2016 WL 1178753, at *4 (E.D. Mich. Feb. 26, 2016) ("SSR 96–6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter."), report and recommendation adopted, No. 14-11281, 2016 WL 1170778 (E.D. Mich. Mar. 25, 2016).

"This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form." *Osley v. Comm'r of Soc. Sec.*, No. 12-12279, 2013 WL 3456963, at *10 (E.D. Mich. July 9, 2013).

Here, the Commissioner opted to use the "Single Decisionmaker" model for resolving Plaintiff's claims at the administrative level. (Tr. 72). The single decisionmaker model stems from 20 C.F.R. §§ 404.1406(b)(2) and 404.906(b)(2); these regulations provide for experimental, stream-lined procedures that eliminated the reconsideration level of review and allowed claims to go directly from the initial denial to ALJ hearing. *See Crooks v. Comm'r of Soc. Sec.*, No. 12–cv–13365, 2013 WL 4502162, at *9 (E.D. Mich. Aug. 22, 2013). "Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants." *Id.* At the appellate level, including the proceedings before the ALJ, these Physical RFC forms completed by SDMs are "not opinion evidence[.]" *Id.* (citing The Programs Operations Manual System ("POMS") DI § 24510.05). "Accordingly, under the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination." *White v. Comm'r of Soc. Sec.*, No. 12–cv–12833, 2013 WL 4414727, at *8 (E.D. Mich. Aug. 14, 2013).

The Commissioner's disability denial explanation paperwork shows that a psychological expert was employed to assist in determining whether Plaintiff met or

equaled a listed impairment insofar as her mental illnesses were concerned. (Tr. 73). However, that paperwork appears to show that the Commissioner did not employ an expert in physical medicine to determine whether Plaintiff met or equaled a listing in terms of her physical impairments. This was error. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (finding that a psychologist was not qualified to diagnose a claimant's physical conditions); *Byerley v. Colvin*, No. 12–CV–91, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) ("Because the psychologist who prepared the form did not consider physical impairments, it cannot be relied on as expert opinion that Plaintiff's combination of physical and mental impairments do not equal a Listing.").

However, I conclude that the Commissioner's error on this point does not merit remand. First, Plaintiff has wholly failed to recognize, raise, or develop any argument related to Step Three, and in doing so has waived any argument regarding the Commissioner's error at that step. *See McPherson*, 125 F.3d at 995–96. Furthermore, the record clearly does not contain sufficient evidence to meet or equal a listed impairment of the physical variety, thus the ALJ's error on this point could not have affected the outcome of the case, and remand would be pointless. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) ("Yet, neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet.") (quoting *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641

(6th Cir. 2013)); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (suggesting that where the claimant puts forth no evidence which could meet a listing, remand for further consideration of that listing would be fruitless). While the ALJ considered Listing 1.05, relating to skeletal disorders, and Listings 3.02 and 3.03, relating to breathing disorders (Tr. 14), there is no evidence in the record which could support a finding that Plaintiff meets or equals those listings. Consequently, the Commissioner's failure to employ an expert in physical medicine to determine whether Plaintiff equaled a listed impairment was harmless.

### H.    Conclusion

I find that the ALJ's decision, which ultimately became the final decision of the Commissioner, is supported by substantial evidence. The ALJ's conclusion that Plaintiff could perform light work was sufficiently well supported, and the ALJ was not obliged to premise her RFC on a doctor's opinion. The record does not demonstrate that Plaintiff suffers any limitations in terms of social functioning or CPP, and the ALJ adequately accounted for Plaintiff's supportable limitations resulting from depression and anxiety. The ALJ provided sufficiently good reasons for according little weight to Dr. Wagner's opinion, and adequately considered Mr. Rivard's report. Finally, while the parties did not discuss the issue, I find that the ALJ erred by not calling upon an expert of physical medicine when determining whether Plaintiff equaled listed impairments of a physical

nature. However, because Plaintiff clearly does not meet any such listing, this error was harmless, and remand should not issue.

**I.    Order**

In light of the above findings, **IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 16) is **DENIED**, the Commissioner's motion for summary judgment (Doc. 19) is **GRANTED**, and that this case is affirmed.

**IT IS SO ORDERED**.

Date:  May 15, 2017                              S/ PATRICIA T. MORRIS
                                                 Patricia T. Morris
                                                 United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 15, 2017                              By s/Kristen Castaneda
                                                Case Manager